UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

KEVIN DWAYNE THERIOT,

      Plaintiff,

v.                               Case No. 2:09-cv-199
                                        Hon. R. Allan Edgar

JEFFREY WOODS et al.,

      Defendants.

_____/

## MEMORANDUM

Plaintiff Kevin Dwayne Theriot, a Michigan state prisoner in the custody of the Michigan Department of Corrections (MDOC), brings this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 and Michigan state law. Theriot is incarcerated at MDOC's Chippewa Correctional Facility (URF). The events underlying his complaint took place at URF and the Kinross Correctional Facility (KCF). Defendant Jeffrey Woods is the Warden at KCF. Defendants Mary Malkowski and Ian McDonald are MDOC employees at URF. The defendants are sued in their individual and official capacities. Plaintiff invokes this Court's subject matter jurisdiction over his federal civil rights claims under 28 U.S.C. § 1331 and 1343(a)(3), and supplemental jurisdiction over his Michigan state law claims pursuant to 28 U.S.C. § 1367.

The Court granted Theriot leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to screen the amended complaint and dismiss any portion of it that fails to state a claim upon which relief may be granted. 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1); 42 U.S.C. § 1997e(c).

## I.    <u>Standard of Review</u>

The Court liberally construes Theriot's *pro se* amended complaint.  *Pro se* complaints are held to a less stringent standard than pleadings drafted by lawyers.  *Erickson v. Pardus,* 551 U.S. 89, 94 (2007); *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996); *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991).

The relaxed pleading standard for *pro se* complaints is not boundless.  Theriot's status as a *pro se* prisoner does not exempt him from complying with substantive law and the minimum requirements for pleading under Fed. R. Civ. P. 8(a).  *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004); *Pilgrim*, 92 F.3d at 416; *Jourdan*, 951 F.2d at 110; *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989).  The Court is not required to assume or conjure up factual allegations and legal claims on Theriot's behalf which he has not pleaded.  *Martin*, 391 F.3d at 714; *Wells*, 891 F.2d at 594. Despite the relaxed pleading standard, a *pro se* plaintiff is not automatically entitled to take every claim or case to trial.  *Martin*, 391 F.3d at 714; *Pilgrim*, 92 F.3d at 416.

To determine whether the amended complaint fails to state a claim upon which relief may be granted, the Court is guided by analogous cases that establish the standard for reviewing complaints under Fed. R. Civ. P. 12(b)(6).  The Court must determine whether the amended complaint should be dismissed because, even if we assume the allegations in the complaint are true, plaintiff Theriot is not entitled to relief as a matter of law.  *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993).  A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that no relief could be granted under any set of facts that could be proved by the plaintiff consistent with the allegations in the complaint.  *Harbin-Bey v. Rutter*, 420 F.3d 571, 575 (6th Cir. 2005); *Golden v. City of Columbus*, 404 F.3d 950, 959 (6th Cir. 2005); *Saglioccolo v. Eagle Ins. Co.*,

112 F.3d 226, 228 (6th Cir. 1997); *Columbia Natural Resources, Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995).

To preclude dismissal, a complaint must contain either direct or inferential allegations which comprise all of the essential elements necessary to sustain a claim for relief under some viable legal theory. *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005); *Golden*, 404 F.3d at 959; *Begala v. PNC Bank, Ohio, National Association*, 214 F.3d 776, 779 (6th Cir. 2000); *Columbia Natural Resources*, 58 F.3d at 1109.

The Court construes the complaint in the light most favorable to plaintiff Theriot and accepts all well-pleaded allegations of fact as being true. *Erickson*, 551 U.S. at 94; *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007); *Columbia Natural Resources*, 58 F.3d at 1109. When an allegation of fact is capable of more than one reasonable inference, it must be construed in the plaintiff's favor. *Saglioccolo*, 112 F.3d at 228; *Columbia Natural Resources*, 58 F.3d at 1109. A complaint cannot be dismissed on the ground that it fails to state a claim merely because the Court does not believe the allegations of fact. *In re Sofamor Danek Group, Inc.*, 123 F.3d 394, 400 (6th Cir. 1997); *Saglioccolo*, 112 F.3d at 228-29; *Columbia Natural Resources*, 58 F.3d at 1109; *Allard v. Weitzman* (*In re DeLorean Motor Co.*), 991 F.2d 1236, 1240 (6th Cir. 1993).

The Court is not required to accept as true mere legal conclusions unsupported by facts and unwarranted inferences of fact. *Jackson v. City of Columbus*, 194 F.3d 737, 745 (6th Cir. 1999); *Lewis v. ACB Business Services, Inc.*, 135 F.3d 389, 405 (6th Cir. 1998); *Grindstaff v. Green*, 133 F.3d 416, 421 (6th Cir. 1998); *Columbia Natural Resources*, 58 F.3d at 1109. The Court may disregard irrational or wholly incredible allegations. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).

Fed. R. Civ. P. 8(a)(2) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint may be dismissed if it fails to give the defendant fair notice of the claim and the grounds upon which the claim rests. *Erickson*, 551 U.S. at 93; *Twombly*, 550 U.S. at 555. While the notice pleading standard in Rule 8(a)(2) does not require that a complaint set forth detailed factual allegations, it does require that the complaint consist of more than mere labels and bare legal conclusions unsupported by facts. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Evans v. Pearson Enterprises, Inc.*, 434 F.3d 839, 847 (6th Cir. 2006); *Golden*, 404 F.3d at 959; *Begala*, 214 F.3d at 779. Conclusory allegations or legal conclusions masquerading as factual allegations will not suffice. The Court is not bound to accept as true mere legal conclusions couched as allegations of fact. *Twombly*, 550 U.S. at 555; *Followell v. Mills*, 317 Fed. Appx. 501, 505 (6th Cir. 2009); *Sims v. Landrum*, 170 Fed. Appx. 954, 956 (6th Cir. 2006); *Mezibov*, 411 F.3d at 716.

A complaint must state a claim for relief that is plausible on its face and rises above the level of speculation. *Twombly*, 550 U.S. at 555, 570. A claim has facial plausibility when the complaint pleads sufficient factual content to allow the Court to draw a reasonable inference that the defendant is liable for the conduct alleged. *Ashcroft*, 129 S. Ct. at 1949. Although this plausibility standard is not equivalent to a "probability requirement," it does require "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556). Where the allegations in a complaint do not permit the Court to reasonably infer anything more than the mere possibility of tortious or unlawful conduct by a defendant, the complaint is deficient and fails to state a plausible claim. *Ashcroft*, 129 S. Ct. at 1950.

## II.    42 U.S.C. § 1983

To state a viable claim under 42 U.S.C. § 1983, plaintiff Theriot must plead two essential elements: (1) the deprivation or violation of a right secured to him by the United States Constitution or other federal law; and (2) the defendant acted under color of Michigan state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Harbin-Bey*, 420 F.3d at 575; *Street v. Corrections Corp. of America*, 102 F.3d 810, 814 (6th Cir. 1996). 42 U.S.C. § 1983 is a method or avenue for vindicating federal rights and § 1983 is not a source of substantive legal rights itself. The first step in analyzing a complaint brought under § 1983 is to identify the specific federal constitutional right that is claimed to have been infringed or violated. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). Before analyzing each of the claims against the defendants, it is necessary to clarify that Theriot may only bring claims for compensatory damages against the defendants in their individual capacities under 42 U.S.C. § 1983.

### A.    Claims For Compensatory Damages Against Defendants in Their Official Capacities and Eleventh Amendment Immunity From Suit

All claims for compensatory damages brought against defendants Woods, Malkowski, and McDonald under 42 U.S.C. § 1983 in their official capacities as MDOC employees must be dismissed with prejudice for failure to state a claim upon which relief may be granted. A suit against MDOC employees in their official capacities is the same as bringing suit against MDOC and the State of Michigan. *Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989); *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985); *Gean v. Hattaway*, 330 F.3d 758, 766 (6th Cir. 2003); *Pusey v. City of Youngstown*, 11 F.3d 652, 657-58 (6th Cir. 1993).

Theriot cannot maintain a 42 U.S.C. § 1983 federal civil rights action to recover compensatory damages against MDOC and the State of Michigan by suing the defendants in their official capacities. The State of Michigan and MDOC are not "persons" subject to suit under 42 U.S.C. § 1983. *Will*, 491 U.S. at 71; *Gean*, 330 F.3d at 766; *Brooks v. Celeste*, 39 F.3d 125, 129 (6th Cir. 1994); *Pusey*, 11 F.3d at 657-58; *Johnson v. Somero,* 2008 WL 3245457, *1 (W. D. Mich. Aug. 6, 2008).

Moreover, the Eleventh Amendment to the United States Constitution provides sovereign immunity for the States. The Eleventh Amendment bars civil actions for money damages against the State of Michigan and its MDOC employees acting in their official capacities unless either: (1) the United States Congress expressly abrogates Eleventh Amendment immunity by federal statute; or (2) the State of Michigan gives its unequivocal, express consent to being sued under 42 U.S.C. § 1983 and waives its Eleventh Amendment immunity from suit. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-101 (1984); *Johnson v. Unknown Dellatifa*, 357 F.3d 539, 545 (6th Cir. 2004); *Nelson v. Miller*, 170 F.3d 641, 646 (6th Cir. 1999); *Doe v. Wigginton* 21 F.3d 733, 736-37 (6th Cir. 1994); *Johnson,* 2008 WL 3245457, at *2.

The United States Congress has not abrogated Eleventh Amendment immunity for the States in civil actions brought under 42 U.S.C. § 1983. *Quern v. Jordan*, 440 U.S. 332, 341, 345 (1979); *Hutsell v. Sayre*, 5 F.3d 996, 999 (6th Cir. 1993); *Cowan v. University of Louisville School of Medicine*, 900 F.2d 936, 940-41 (6th Cir. 1990); *Johnson,* 2008 WL 3245457, at *2.

The State of Michigan has not waived its Eleventh Amendment immunity from suit in actions brought under 42 U.S.C. § 1983. The State of Michigan has not consented to being sued in the federal courts for money damages under 42 U.S.C. § 1983. *Johnson*, 357 F.3d at 545; *Hill v.*

*Michigan*, 62 Fed. Appx. 114, 115 (6th Cir. 2003); *Moore v. McGinnis*, 1999 WL 486639, * 1 (6th Cir. June 28, 1999); *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986); *Johnson,* 2008 WL 3245457, at *2.

In sum, to the extent that the complaint pleads federal civil rights claims against defendants Woods, Malkowski, and McDonald in their official capacities as MDOC employees seeking to recover compensatory damages under 42 U.S.C. § 1983, the official capacity claims must be dismissed with prejudice. The Eleventh Amendment does not, however, bar plaintiff Theriot from bringing claims for compensatory damages against defendants Woods, Malkowski, and McDonald in their individual capacities under 42 U.S.C. § 1983.

### B.    Demand for Injunctive Relief

The amended complaint makes a frivolous demand for injunctive relief. Theriot wants this Court to issue what he refers to as "punitive injunctive order" to the Director of MDOC to "fire" (discharge) defendants Woods, Malkowski, and McDonald from their jobs as MDOC employees. Such injunctive relief would be entirely improper and is not available under 42 U.S.C. § 1983. This Court has no authority under 42 U.S.C. § 1983 to order the Director of MDOC to terminate the employment of Woods, Malkowski, and McDonald. The issue whether Woods, Malkowski, and McDonald should be employed by MDOC is strictly a matter for MDOC to determine, not this Court. Accordingly, the demand for injunctive relief will be denied as frivolous.

### III.    Claims Against Defendant Jeffrey Woods

### A.    <u>Allegations in Amended Complaint</u>

In his amended complaint, plaintiff Theriot makes the following allegations of fact against defendant Woods. On July 31, 2008, Theriot met with hearing investigator Kevin Alford to discuss a major misconduct ticket that had been issued to Theriot. Alford was verbally abusive because Alford did not like the Theriot's explanation and defense. Alford made Theriot leave and Alford refused to "write up" (report) Theriot's defense to the major misconduct ticket.

On August 14, 2008, Alford was present at the administrative hearing on the major misconduct ticket. Alford and hearing officer David Theut made unspecified abusive oral statements and they threatened to put Theriot "in the hole" – punish plaintiff with solitary confinement. When Theriot returned to his prison cell, he wrote a grievance against Alford and Theut. Approximately one week later, Theriot was approached by MDOC officer Charles Stillenbauer who harassed Theriot in retaliation for making the grievance against Alford and Theut. Stillenbauer issued a retaliatory misconduct ticket against Theriot.

Theriot contends he wrote to Warden Woods complaining about the harassment and retaliation after it occurred but Woods did not respond. It is alleged that Woods was negligent for failing to investigate Theriot's complaint about the harassment and retaliation. Of course, Theriot had the formal MDOC prisoner grievance process available to him instead of sending notes directly to Warden Woods. Woods was not present at the scene when any acts of harassment or retaliation occurred. It is not alleged that Woods actively participated in, authorized, encouraged, approved, or knowingly acquiesced in any specific act of harassment or retaliation directed against plaintiff Theriot by MDOC employees Alford, Theut, and Stillenbauer.

Theriot prepared a lawsuit to be filed in court but he was not allowed to send out mail because he was indigent. It appears that he may have wanted to file a federal civil rights suit in the

United States District Court for the Eastern District of Michigan. In his amended complaint, Theriot refers to the "Eastern District Court." [Doc. No. 6, p. 6].

Theriot arranged to have another prisoner named Moore mail Theriot's lawsuit to the court using Moore's name on the envelope. A MDOC case manager informed Woods about the lawsuit that Theriot was attempting to mail. It is alleged that on September 29, 2008, Woods stole Theriot's outgoing legal mail containing the lawsuit. Anything that Theriot attempted to mail out of the prison using his own name was intercepted and stolen by Woods. Theriot had to secretly send his mail out of the correctional facility in the envelopes of other prisoners. The court in which Theriot attempted to file his lawsuit said it never received anything from him. On October 15, 2008, Theriot received a document from the "Eastern District Court" stating that it never received his lawsuit.

From September 29, 2008, through October 15, 2008, Theriot sent "kites" (written communications) back and forth with Warden Woods concerning the lawsuit. Theriot says he was harassed and issued prisoner misconduct tickets in retaliation.

On November 28, 2008, Theriot was being transported to the "hole" based on a retaliatory misconduct ticket. While handcuffed and walking peacefully, MDOC Sergeant Steven Maclean committed an unprovoked assault and battery against Theriot. The complaint does not describe the nature and extent of the physical injuries, if any, that Theriot may have suffered as a result of the assault and battery. It is claimed that Theriot was denied medical attention. The complaint does not plead sufficient facts from which it can reasonably be inferred that Theriot suffered a serious or significant injury making it necessary for him to receive medical treatment. It is alleged that Theriot sent kites to Warden Woods about the assault and battery incident but Woods did not respond.

Woods was not present and did not observe Maclean assault or use force against Theriot on November 28, 2008. There are no facts alleged from which it can reasonably be inferred that Woods participated in, authorized, encouraged, approved, or knowingly acquiesced in the assault and use of force by Maclean.

The complaint avers that Woods' negligence in failing to investigate and stop the previous harassment of Theriot by MDOC employees Alford, Theut, and Stillenbauer proximately caused Maclean to commit the assault and battery against Theriot on November 28, 2008. Theriot further contends that Woods should be held liable for the assault and unnecessary use of force based on a civil aiding and abetting theory. It is alleged that Woods' negligence and failure to act makes Woods liable for aiding and abetting the assault and battery, and unnecessary use of force, by Maclean on November 28, 2008. In other words, Theriot contends that if Warden Woods had earlier investigated and taken action on Theriot's kites concerning the harassment, it would have prevented Maclean from assaulting and using unnecessary violent force against Theriot on November 28, 2008.

**B.** **Eighth Amendment Cruel and Unusual Punishment: Harassment and Excessive Force**

The allegations in the amended complaint fail to state a claim against defendant Woods upon which relief may be granted pursuant to 42 U.S.C. § 1983 and the Eighth Amendment to the United States Constitution.

Theriot cannot maintain an Eighth Amendment cruel and unusual punishment claim against Woods under 42 U.S.C. § 1983 predicated on a negligence theory. It is only the unnecessary and wanton infliction of pain that constitutes cruel and unusual punishment prohibited by the Eighth Amendment. To be cruel or unusual punishment, a prison official's conduct must involve more than

negligence or lack of ordinary due care for the prisoner's health or safety. The correct standard under the Eighth Amendment for imposing liability is that the defendant prison official must have acted with deliberate indifference which requires a culpable state of mind greater than negligence. *Farmer v. Brennan*, 511 U.S. 825 (1994); *Wilson v. Seiter*, 501 U.S. 294 (1991); *Whitley v. Albers*, 475 U.S. 312, 319 (1986); *Brooks*, 39 F.3d at 127-29.

The complaint fails to state a claim of supervisory liability against Woods under 42 U.S.C. § 1983. Woods was not present at the scene when any of the acts of harassment or retaliation occurred. There are no facts alleged in the complaint showing that Woods actively participated in, encouraged, authorized, approved, or knowingly acquiesced in the harassment or retaliation.

There is no liability under § 1983 based on the *respondeat superior* doctrine. *Ashcroft*, 129 S. Ct. at 1948; *Monell v. New York City Department of Social Services*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009); *Leary v. Daeschner*, 349 F.3d 888, 903 (6th Cir. 2003). Under 42 U.S.C. § 1983 the liability of a supervisor must be based on more than the mere right to control subordinate employees. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).

A constitutional violation must be based upon a defendant's own active unconstitutional conduct. *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft*, 129 S. Ct. at 1948. A supervisor may be held liable under § 1983 when the supervisor directly participated in or encouraged the specific incident of misconduct that violates federal law, or the supervisor at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate. *Leary*, 349 F.3d at 903; *Shehee*, 199 F.3d at 300; *Bellamy v. Bradley*, 729

F.2d 416, 421 (6th Cir. 1984). A supervisor's simple awareness of a subordinate employee's violation of a plaintiff's federal constitutional rights does not impose supervisor liability pursuant to 42 U.S.C. § 1983. *Leary*, 349 F.3d at 903; *Lillard v. Shelby County Board of Education*, 76 F.3d 716, 728 (6th Cir. 1996). Supervisory liability cannot be based upon a supervisor's mere failure to act. *Grinter*, 532 F.3d at 575; *Greene*, 310 F.3d at 899; *Summer v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Applying these standards, Theriot's complaint fails to state a claim that Woods may be held liable under 42 U.S.C. § 1983 as a supervisor and the Warden of the correctional facility.

To the extent the complaint pleads that Woods is liable under 42 U.S.C. § 1983 based on a theory of civil aiding and abetting, the complaint fails to state a claim upon which relief may be granted. There is no civil aiding and abetting liability under 42 U.S.C. § 1983. The plain text of 42 U.S.C. § 1983 does not provide for aiding and abetting liability. Congress knows how to impose aiding abetting liability when it chooses to do so. *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 176-77 (1994). If Congress intended to create and provide for aiding and abetting liability in 42 U.S.C. § 1983, it would have used or included the words "aid" and "abet" in § 1983, but Congress did not do so. *Cf. Central Bank of Denver*, 511 U.S. at 177.

In *Central Bank of Denver*, 511 U.S. 164, the Supreme Court explains that aiding and abetting is an ancient doctrine of criminal law. Congress enacted 18 U.S.C. § 2, a general aiding and abetting statute applicable to all federal criminal offenses. *Id*. at 177. 18 U.S.C. § 2 is not applicable in this civil case. With regard to federal civil cases, Congress has taken a statute-by-statute approach to civil aiding and abetting liability. *Id*. at 182-83. Congress has not enacted a general civil aiding and abetting statute either for civil actions brought by the United States government or tort actions by private parties. When Congress enacts a federal statute under which a private person may bring

a civil action to recover damages, there is no general presumption that the plaintiff can make a claim for aiding and abetting liability. *Id*. at 182.

**C.** **State Law Claims: Harrassment, Assault and Battery, and Negligence**

All Michigan state law claims brought against defendant Woods shall be dismissed with prejudice for failure to state a claim upon which relief may be granted. There are no facts alleged in the complaint to establish that Woods may be held vicariously liable under Michigan law for the acts of his subordinates and other MDOC employees. Woods was not present at the scene when Theriot claims he was harassed and physically assaulted. Woods did not actively participate in, encourage, authorize, approve, or knowingly acquiesce in the commission of any torts against Theriot by other MDOC employees.

The complaint fails to state a claim that Woods is liable under Michigan law based on a theory of civil aiding and abetting. The Restatement (Second) of Torts § 876(b) (1977), under a concert of action principle, sets forth a principle of tort liability "with rough similarity to criminal aiding and abetting." *Central Bank of Denver*, 511 U.S. at 181. The Sixth Circuit recognizes that § 876(b) of the Restatement of Torts provides the basis for the modern application of civil aiding and abetting liability. *Pavlovich v. National City Bank*, 435 F.3d 560, 570 (6th Cir. 2006); *Aetna Casualty and Surety Co. v. Leahey Construction Co., Inc*., 219 F.3d 519, 532-33 (6th Cir. 2000).

Restatement (Second) of Torts § 876 provides in part: "For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he ... (b) knows that the other's conduct constitutes a breach of a duty and gives substantial assistance or encouragement to the other so to conduct himself." To impose liability on defendant Woods as an aider and abettor under Section 876(b), plaintiff Theriot at a minimum must allege and be able to prove two essential

elements: (1) Woods had actual knowledge that the primary party's conduct is a breach of a legal duty owed to plaintiff Theriot; and (2) Woods provided substantial assistance or encouragement to the primary party in carrying out the tortious act against plaintiff Theriot. *Bariteau v. PNC Financial Services Group, Inc.*, 285 Fed. Appx. 218, 224 (6th Cir. 2008); *Pavlovich*, 435 F.3d at 570; *Aetna Casualty*, 219 F.3d at 533-37.

The actual knowledge element can never be established merely by showing that the alleged aider and abettor through the exercise of reasonable diligence "should have known" but failed to gain actual knowledge due to his negligence. Negligence on the part of a defendant who is alleged to be an aider and abettor is never sufficient to establish the actual knowledge element necessary for aiding and abetting liability. *Aetna Casualty*, 219 F.3d at 536-37.

With regard to the substantial assistance or encouragement element, a plaintiff must allege facts sufficient to make out a claim that the defendant's assistance or encouragement was a proximate cause of the wrongful conduct or tort. The assistance or encouragement must have been a substantial factor in causing the tort. *Aetna Casualty*, 219 F.3d at 537; *El Camino Resources, Ltd. v. Huntington National Bank*, 2009 WL 427278, * 4 (W.D. Mich. Feb. 20, 2009).

To determine whether there is substantial assistance or encouragement to make a claim for aiding and abetting (concert of action) liability based on Restatement (Second) of Torts § 876(b), the courts consider the following factors to the extent they are relevant: the nature of the act encouraged, the amount and duration of the assistance provided, the defendant's presence or absence at the time the tort is committed, the defendant's relation to the primary party who committed the tort, and the defendant's state of mind. *Aetna Casualty*, 219 F.3d at 537; *In re Temporomandibalur Joint (TMJ)*

*Implant Recipients v. Dow Chemical Co.*, 113 F.3d 1484, 1495 (8th Cir. 1997); *Halberstam v. Welch*, 705 F.2d 472, 478 (D.C. Cir. 1983); *El Camino Resources*, 2009 WL 427278, at * 4.

It is uncertain whether the Michigan Supreme Court would approve and adopt the doctrine of liability for civil aiding and abetting (concert of action) derived from the Restatement (Second) of Torts § 876(b). *See e.g. El Camino Resources*, 2009 WL 427278; *Goodman v. Mady*, 2005 WL 2417209, * 8 (E.D. Mich. Sept. 30, 2005). Theriot does not cite, and this Court has not found, any reported caselaw and precedent where the Michigan Supreme Court or Michigan Court of Appeals have formally adopted a common law doctrine of civil aiding and abetting (concert of action) liability derived from the Restatement (Second) of Torts § 876(b).

The Michigan Court of Appeals in an unpublished opinion, *Carson Fischer, PLC v. Standard Federal Bank*, 2005 WL 292343, * 6 (Mich. Ct. App. February 8, 2005), *reversed in part*, 475 Mich. 851, 713 N.W.2d 265 (Mich. Sup. Ct. 2006), discussed, but did not adopt, the principle of civil aiding and abetting liability based on Restatement (Second) of Torts § 876(b). The Michigan Court of Appeals stated: "The essential elements required for [civil] aiding and abetting are: (1) that an independent wrong exist; (2) that the aider or abettor know of the wrong's existence; and (3) that substantial assistance be given to effecting that wrong." *Carson Fischer*, 2005 WL 292343, at * 6; *see also, German Free State of Bavaria v. Toybo Co., Ltd.*, 2007 WL 2986475, * 6 (W.D. Mich. Oct. 10, 2007) (citing *Carson Fischer*). Without actually adopting the principle of civil aiding and abetting liability (concert of action) as the law in Michigan, the *Carson Fischer* court decided there could not be liability for aiding and abetting under the facts presented since the alleged aider and abettor lacked knowledge that a wrong or tort was being committed and did not provide substantial assistance. *Carson Fischer*, 2005 WL 292343, at * 6.

Assuming *arguendo* that the Michigan state courts would recognize and allow an aiding and abetting claim to be made in a civil tort case brought under Michigan law, this Court concludes that the facts alleged in Theriot's amended complaint fail to state a viable claim of liability against defendant Woods predicated on a theory of aiding and abetting derived from the Restatement (Second) of Torts § 876(b). The complaint does not allege sufficient facts to establish two essential elements necessary for civil aiding and abetting liability. The complaint does not allege facts from which it can reasonably be inferred that: (1) defendant Woods had actual knowledge that MDOC employees Alford, Theut, Stillenbauer, and Maclean were going to commit any wrongs or torts against plaintiff Theriot; and (2) defendant Wood provided substantial assistance or encouragement to MDOC employees Alford, Theut, Stillenbauer, and Maclean to commit any wrongs or torts against plaintiff Theriot. The complaint alleges that *after* MDOC employees Alford, Theut, Stillenbauer, and Maclean engaged in the misconduct complained of (harassment, retaliation, assault and battery), Theriot informed defendant Woods about the misconduct which had already occurred. This cannot amount to aiding and abetting by Woods. At the time when Alford, Theut, Stillenbauer, and Maclean are alleged to have committed torts against plaintiff Theriot, defendant Woods did not have actual knowledge that the tortious conduct was going to happen and Woods did not provide substantial assistance or encouragement to them to commit any torts against plaintiff Theriot.

The common law negligence claim against defendant Woods will be dismissed. The complaint avers that Woods was negligent for failing to investigate and stop the harassment of Theriot by MDOC employees Alford, Theut, and Stillenbauer, and that this ultimately led to Maclean committing the assault and battery against Theriot on November 28, 2008. Theriot claims the assault

and battery was caused by Woods' negligence.   The main deficiency with this negligence claim is that the complaint fails to allege sufficient facts to establish the element of causation.

To make out a *prima facie* claim of common law negligence under Michigan law, Theriot is required to allege and be able to prove four essential elements: (1) Woods owed a legal duty to Theriot; (2) Woods breached that duty; (3) causation; and (4) damages. *Henry v. Dow Chemical Co.*, 701 N.W.2d 684, 688  (Mich. Sup. Ct. 2005); *Haliw v. City of Sterling Heights*, 627 N.W.2d 581, 588 (Mich. Sup. Ct. 2001).   The third element, causation, requires both cause in fact and legal or proximate cause.   Cause in fact requires a showing that but for the defendant's negligent conduct, the harm or injury to the plaintiff would not have occurred.   *Craig v. Oakwood Hospital*, 684 N.W.2d 296, 309 (Mich. Sup. Ct. 2001); *Haliw*, 627 N.W.2d at 588; *Skinner v. Square D Co.*, 516 N.W.2d 475, 479 (Mich. Sup. Ct. 1994).   Proximate cause involves examining the foreseeability of consequences and whether the defendant may be held legally responsible for such consequences. *Haliw*, 627 N.W.2d at 588.

Theriot's complaint does not allege sufficient facts from which it can reasonably be inferred that defendant Woods's conduct  was both a cause in fact and a proximate cause an assault and battery committed by Maclean against Theriot.   The complaint does not set forth facts to establish that Maclean would not have committed the assault and battery against Theriot but for defendant Woods' conduct.   Woods' conduct is too remote from the assault and battery to be a proximate cause of the harm or injury to Theriot.   Assuming that Woods failed to investigate complaints by Theriot of verbal harassment by other MDOC employees, it would not have been reasonably foreseeable to Woods that his conduct could cause Maclean to commit an assault and battery against Theriot.

**D.**     **Eighth Amendment Cruel and Unusual Punishment: Denial of Medical Care**

Theriot alleges that on November 28, 2008, he was denied medical care after being assaulted by Maclean. He contends that defendant Woods was negligent in not providing Theriot with medical care and keeping him in the hole until January 7, 2009.

As discussed *supra*, Theriot cannot maintain an Eighth Amendment cruel and unusual punishment claim against defendant Woods under 42 U.S.C. § 1983 predicated on a negligence theory. The Eighth Amendment requires prison authorities to provide necessary medical care to prisoners, as a failure to do so would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to a prisoner's serious medical needs. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

An Eighth Amendment claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer*, 511 U.S. at 834. To satisfy the objective component, Theriot must show that his need for medical care was sufficiently serious. *Id.* Theriot must show that he was incarcerated under conditions posing a substantial risk of serious harm. The objective component is satisfied where the seriousness of the prisoner's need for medical care is obvious even to a lay person. *Blackmore v. Kalamazoo County*, 390 F.3d 890, 899 (6th Cir. 2004). If there are "minor maladies or non-obvious complaints of a serious need for medical care," *Blackmore*, 390 F.3d at 898, then the prisoner must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Napier v. Madison County, Ky.*, 238 F.3d 739, 742 (6th Cir. 2001).

The subjective component requires Theriot to allege facts showing that prison officials had "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, the prison official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists to the prisoner, and the official must also draw that inference. *Id.* at 837.

In his amended complaint plaintiff Theriot makes insufficient allegations of fact to support the objective component of the *Farmer* deliberate-indifference test. Theriot makes only vague, conclusory allegations that he was assaulted by MDOC employee Maclean. The complaint does not allege the nature and extent of any specific injuries he actually sustained, whether his need for medical care was sufficiently serious, and whether the need for medical care was obvious even to a layperson. *Blackmore*, 390 F.3d at 899. The allegations in the amended complaint do not state a viable claim under the Eighth Amendment for denial of medical care.

E.  **First Amendment: Right To Send Mail and Right of Access to the Courts**

The amended complaint alleges that defendant Woods stole or committed a theft of Theriot's outgoing mail and deprived Theriot of his First Amendment right of access to the courts. It is alleged that Woods did this in retaliation for Theriot filing grievances against MDOC employees. Thus, the complaint claims that defendant Woods violated Theriot's right to send outgoing mail and right of access to the courts protected by the First Amendment to the United States Constitution.

Theriot may proceed on the First Amendment claim against defendant Woods pursuant to 42 U.S.C. § 1983. Under the First Amendment prisoners have a right of access to the courts and a right to freedom of expression which includes the general right to send and receive mail. The right to send mail must be balanced against the authority of prison officials to regulate and inspect a prisoner's outgoing mail for legitimate security purposes and to seize contraband. *Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989); *Turner v. Safley*, 428 U.S. 78, 89 (1987); *Wolfe v. McDonnell*, 418 U.S. 538, 575-77 (1974); *Procunier v. Martinez*, 416 U.S. 396, 412-13 (1974); *Harbin-Bey*, 420 F.3d at 578.

The federal courts accord substantial deference to prison administrators to regulate prison mail where necessary to preserve important penological interests. *Thornburgh*, at 407-08; *Procunier*, 416 U.S. at 404-05; *Harbin-Bey*, 420 F.3d at 578. The First Amendment right of prisoners to send and receive mail "must be exercised with due regard for the 'inordinately difficult undertaking' that is modern prison administration." *Thornburgh*, 490 U.S. at 407 (quoting *Turner*, 482 U.S. at 85).

Outgoing prisoner mail may be regulated, inspected, and censored by prison officials in accordance with administrative regulations or practices that: (1) further an important or substantial governmental interest unrelated to the suppression of expression; and (2) extend no further than necessary or essential to the protection of the particular governmental interest involved. *Thornburgh*, 490 U.S. at 413; *Procunier*, 416 U.S. at 412-13; *Martucci v. Johnson*, 944 F.2d 291, 295-96 (6th Cir. 1991); *Bradford v. Gerth*, 2008 WL 724132, * 3 (W.D. Mich. March 17, 2008); *Huff v. Rutter*, 2006 WL 2039983, * 3 (W.D. Mich. July 19, 2006). For example, prison officials have the authority to inspect and regulate outgoing prisoner mail concerning escape plans, criminal

activity, encoded messages, and contraband. *Thornburgh*, 490 U.S. at 411-12; *Procunier*, 416 U.S. at 413; *Bradford*, 2008 WL 724132, at * 3.

A prisoner's legal mail is afforded heightened protection because of the potential for unnecessarily interfering with his First Amendment right of access to the courts. *Sallier v. Brooks*, 343 F.3d 868, 873 (6th Cir. 2003); *Kensu v. Haigh*, 87 F.3d 172, 174 (6th Cir. 1996). To prevail on a claim under 42 U.S.C. § 1983 that he has been deprived of his First Amendment right of access to the courts, a plaintiff prisoner is required to plead and prove that the defendant's actions caused the prisoner to suffer an actual litigation-related injury or legal prejudice to a non-frivolous claim. An actual injury does not occur without a showing by the plaintiff that a non-frivolous claim has been lost or rejected by a court, or that his presentation of a non-frivolous claim is being prevented by the defendant. *Lewis v. Casey*, 518 U.S. 343, 349-51, 354-56 (1996); *Clark v. Corrections Corp. of America*, 113 F. Appx. 65, 68 (6th Cir. 2004); *Pilgrim*, 92 F.3d at 416; *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996); *Coleman v. Sweeney*, 2009 WL 3270006, * 3 (W.D. Mich. Oct. 8, 2009); *Nali v. Whitbeck*, 2008 WL 5381818, * 7 (W.D. Mich. Dec. 22, 2008); *Crockett v. Caruso*, 2006 WL 1275055, * 4 (W.D. Mich. May 5, 2006).

The First Amendment claim against defendant Woods – depriving plaintiff Theriot of the right to send mail and right of access to the courts – survives the screening process under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A; and 42 U.S.C. § 1997e(c). The Court expresses no opinion here whether Theriot may ultimately prevail on the First Amendment claim under 42 U.S.C. § 1983.

## F.    **Demand for Criminal Prosecution**

The complaint states that plaintiff Theriot wants to "press criminal charges" against defendant Woods. [Doc. No. 6, p. 10]. It is not clear whether Theriot seeks to bring criminal

charges against defendant Woods in federal court based on federal criminal law, or in the Michigan state courts based on Michigan criminal law, or both. In any event, this particular demand for relief in the amended complaint to "press criminal charges" must be dismissed for failure to state a claim upon which relief can be granted.

Theriot cannot utilize this civil lawsuit as a vehicle to initiate any federal or Michigan state criminal charges. If Theriot intends to bring criminal charges against defendant Woods or any other person, he cannot do so in this civil proceeding. In his capacity as a private citizen, Theriot lacks standing and legal authority to initiate or compel the initiation of federal criminal proceedings against defendant Woods. *Booth v. Henson*, 290 Fed. Appx. 919, 920-21 (6th Cir. 2008); *United States v. Oguaju*, 76 Fed. Appx. 579, 581 (6th Cir. 2003) (district court properly dismissed citizen's claim filed pursuant to 18 U.S.C. §§ 241 and 242 because he had no private right of action to initiate federal criminal prosecution under these statutes); *Robinson v. State of Michigan*, 2009 WL 3011225, * 5 (W.D. Mich. Sept. 16, 2009). Theriot lacks a judicially cognizable interest in the criminal prosecution or nonprosecution of another person. *Diamond v. Charles*, 476 U.S. 54, 64 (1986); *Linda R.S. v. Richard D*., 410 U.S. 614, 619 (1973).

Moreover, this United States District Court lacks the jurisdiction and authority to address the question and decide whether any criminal proceedings can or should be initiated against defendant Woods in the Michigan state courts under Michigan criminal law. The issue of possible criminal prosecution under Michigan law is strictly a matter that falls within the jurisdiction and authority of the appropriate Michigan state prosecutor and the Michigan state courts.

## IV.    Claims Against Defendants Malkowski and McDonald

### A.    Allegations in Amended Complaint

With regard to defendants Malkowski and McDonald, the amended complaint alleges the following.  On March 28, 2009, Theriot received a major misconduct ticket from Mary Malkowski. There is a box on the ticket that can be filled in to show whether the prisoner requests a hearing investigator.  Theriot said he did not want a hearing investigator but Malkowski refused to let him sign the ticket.  Theriot wanted the ticket to indicate that he did not request a hearing investigator. Contrary to Theriot's wishes, Malkowski wrote out the major misconduct ticket indicating there was a need for a hearing investigator or a hearing investigator was requested.  Theriot contends Malkowski violated MDOC Policy Directive 03.03.105 and Malkowski's conduct constitutes the crime of forgery in violation of Michigan state law.  There is no allegation that Malkowski forged Theriot's signature on the ticket.

The reason Theriot did not want a hearing investigator was part of a deliberate strategy to try and get the major misconduct charge dismissed without a hearing.  If a hearing investigator is not assigned to investigate a major misconduct charge, MDOC regulations require an expedited administrative hearing within a seven-day time limit.  The complaint avers that some URF prisoners had been successful in getting their major misconduct tickets "thrown out" (dismissed) because the time limit for the administrative hearings expired.  Theriot hoped to get his major misconduct ticket dismissed by not requesting a hearing investigator and insisting on an expedited hearing in the hope that MDOC would be unable to hold a hearing within the required time limit.

The Court takes judicial notice of the following provisions in MDOC Policy Directive 03.03.105.  Policy Directive 03.03.105 Paragraph L provides that prisoners charged with major

misconduct are entitled to a formal administrative hearing. Policy Directive 03.03.105 Paragraph O provides that the prisoner shall be advised of his right to witnesses, relevant documents, and a hearing investigator. During the initial stage of review after a major misconduct charge is made, the "reviewing officer shall note on the Major Misconduct Report if the prisoner requests a hearing investigator as well as identifying any witnesses and documents requested" by the prisoner. *Id*.

Policy Directive 03.03.105 Paragraph U provides: "A hearing investigator shall be assigned to conduct a complete investigation of the [major] misconduct charge(s) if the prisoner requested, at the time of [initial] review, a hearing investigator, witnesses, or documents or the prisoner chooses not to cooperate during the review process, including choosing not to attend the review."

Policy Directive 03.03.105 Paragraph BB.1 provides that if a hearing investigator is not assigned, then a major misconduct hearing shall be conducted within seven (7) business days after the prisoner receives written notice of the major misconduct charge. If a hearing investigator is assigned, then a major misconduct hearing shall be conducted within fourteen (14) business days after the prisoner receives written notice of the major misconduct charge. Policy Directive 03.03.105 Paragraph BB.3 provides that these time limits may be extended if there is reasonable cause for delay.

Theriot contends that Malkowski refused to let him sign the misconduct ticket because he would have indicated he did not want a hearing investigator. Theriot wanted proceed without a hearing investigator as part of his strategy to trigger an expedited hearing on the major misconduct ticket within the seven-day time limit. Theriot asserts that if a major misconduct hearing is not held within the applicable time limit, the major misconduct charge is dismissed by MDOC. The complaint avers that the reason Malkowski refused to let Theriot sign the major misconduct ticket

- 24 -

as not wanting a hearing investigator is so that there would be more time (14 days) to hold an administrative hearing before the ticket would have to be dismissed. When Malkowski refused to allow Theriot to discuss the matter with a higher ranking MDOC captain or lieutenant, Theriot refused to "lockdown" in his prison cell.

Theriot met with MDOC officials including Captain Miller. When Theriot explained what had occurred with Malkowski, Captain Miller replied that it was Malkowski's choice whether to: (1) answer "yes" or "no" on the major misconduct ticket concerning the need for a hearing investigator; and (2) allow Theriot to sign the ticket. Theriot disagrees with Captain Miller's explanation, and Theriot claims that Malkowski violated MDOC Policy Directive 03.03.105.

On March 29, 2009, Theriot was issued another major misconduct ticket and Malkowski "did the same thing." i.e. Malkowski refused to allow him to sign the ticket and indicate that he did not want a hearing investigator. Theriot made a grievance against Malkowski. Theriot was issued another misconduct ticket by Sergeant Meeny who likewise refused to allow Theriot to sign the misconduct ticket to indicate that he did not request a hearing investigator. Theriot in turn made a similar grievance against Sergeant Meeny.

Theriot contends that defendant McDonald was an inspector involved in the review of the grievance against Malkowski. It is alleged that McDonald destroyed the evidence against Malkowski which "robbed" (deprived) Theriot of his right to pursue an appeal and investigate his grievance against Malkowski. Theriot alleges that because he made grievances against MDOC employees Malkowski and Meeny, he was issued retaliatory prisoner misconduct tickets and subjected to unspecified sanctions or punishment. Theriot asserts that he was issued a retaliatory misconduct

ticket on March 28, 2009, another retaliatory misconduct ticket a week later, and three more retaliatory misconduct tickets on August 21, 2009.

**B.**     **MDOC Policy Directive 03.03.105 and Forgery**

The complaint fails to allege sufficient facts to make out a viable claim that Malkowski violated MDOC Policy Directive 03.03.105. Theriot misreads and misconstrues Policy Directive 03.03.105. Although Theriot had a right to request a hearing investigator, this does not necessarily mean it is improper or a violation of Policy Directive 03.03.105 for Malkowski on her own initiative to request a hearing investigator. There is nothing in Policy Directive 03.03.105 that prohibits Malkowski from requesting that the major misconduct tickets she issued to Theriot be assigned or referred to a hearing investigator. Just because Theriot does not want to exercise his right request a hearing investigator, this does not completely prohibit MDOC and Malkowski from ever referring the major misconduct charge to a hearing investigator. Theriot alone does not have the ultimate power and final authority to decide that the major misconduct charge can never be referred to a hearing investigator under any circumstances.

In any event, the allegation that Malkowski may have violated or failed to comply with MDOC Policy Directive 03.03.105 fails to state a claim upon which can be granted under 42 U.S.C. § 1983 and the Due Process Clause of the Fourteenth Amendment to the United States Constitution. The same is true with respect to the allegation that Malkowski's conduct constitutes the crime of forgery in violation of Michigan law. 42 U.S.C. § 1983 is addressed to remedying only violations of federal law, not Michigan state law and not MDOC Policy Directives. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982); *Laney v. Farley*, 501 F.3d 577, 580-81 (6th Cir. 2007).

Alleged violations of a Michigan law (criminal forgery) and MDOC Policy Directive 03.03.105 do not rise to the level of a violation or deprivation of a right guaranteed by the United States Constitution cognizable under 42 U.S.C. § 1983. *Laney*, 501 F.3d at 581 n.2; *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *McVeigh v. Bartlett*, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (failure to follow MDOC Policy Directive does not rise to the level of a constitutional violation because MDOC Policy Directive does not create a liberty interest entitled to protection under the Fourteenth Amendment's Due Process Clause); *Moore v. Caruso*, 2010 WL 204095, * 3 (W.D. Mich. Jan. 15, 2010); *Coleman*, 2009 WL 3270006, at * 6.

### C.    Fourteenth Amendment Due Process

Theriot next claims that Malkowski's conduct violates his Fourteenth Amendment right to procedural due process. This due process must be dismissed. The starting point for any discussion of the Fourteenth Amendment procedural due process rights of a prisoner subject to a disciplinary proceeding is *Wolff v. McDonnell,* 418 U.S. 539 (1974). In *Wolff*, the Supreme Court held that prison disciplinary proceedings must meet certain basic minimum due process requirements by: (1) giving inmates advance written notice of disciplinary charges at least 24 hours prior to the disciplinary hearing; (2) allowing inmates to call witnesses and present documentary evidence in their defense; and (3) providing inmates with a written statement of the evidence relied on by disciplinary boards and the reasons for disciplinary action. *Wolff*, 418 U.S. at 563-69.

Theriot does not allege that defendant Malkowski violated any of the due process requirements set forth in *Woolf*. Rather, Malkowski accorded Theriot *more* due process than required by *Woolf* in that Malkowski requested a hearing investigator to investigate the major

misconduct charge. Theriot was not deprived of a due process hearing on the major misconduct charge. Theriot complains that the administrative hearing on the major misconduct charge should have been expedited and held more quickly without a hearing investigator. This fails to state a viable claim for deprivation of due process under the Fourteenth Amendment.

Theriot has not cited any legal authority for the proposition that he has a constitutional right to refuse to have a major misconduct charge investigated by MDOC officials. The Fourteenth Amendment protects Theriot from being subjected to prisoner disciplinary proceedings that fall below the minimum due process requirements set forth in *Woolf*. Theriot does not have a right under the Fourteenth Amendment to demand *less* due process than was given to him in this case.

The allegation that destruction of evidence by defendant McDonald violated Theriot's right to due process, the complaint fails to state a claim upon which relief may be granted. It is alleged that McDonald destroyed evidence showing that Malkowski did not allow Theriot to sign the major misconduct ticket and indicate that Theriot did not request a hearing investigator. The complaint avers that the destruction of evidence caused Theriot to be unable to appeal and investigate his grievance against Malkowski for violating MDOC Policy Directive 03.03.105.

This Fourteenth Amendment due process claim against McDonald must be dismissed for the following reasons. This claim is predicated on the false premise that defendant Malkowski purportedly violated MDOC Policy Directive 03.03.105 and that Theriot had a valid prisoner grievance against Malkowski. As discussed *supra*, the facts alleged in the complaint are insufficient to establish that Malkowski violated MDOC Policy Directive 03.03.105. Because his prisoner grievance against Malkowski was without merit, Theriot cannot show that he has suffered any harm or injury under 42 U.S.C. § 1983 caused by McDonald's "destruction of evidence."

The alleged destroyed evidence is not relevant to a non-frivolous federal constitutional claim. Theriot's due process claim against McDonald is derived from and dependant upon his interrelated due process claim against Malkowski. Since the constitutional due process claim against Malkowski is being dismissed for failure to state a claim, Theriot's derivative due process claim against McDonald likewise fails and must be dismissed.

Moreover, Theriot does not have a due process right under the Fourteenth Amendment to file a prisoner grievance. There is no constitutionally protected due process right to an effective prison grievance procedure through MDOC. *Walker v. Michigan Department of Corrections,* 128 Fed. Appx. 441, 445 (6th Cir. 2005); *Young v. Gundy,* 30 Fed. Appx. 568, 569-70 (6th Cir. 2002); *Carpenter v. Wilkinson*, 2000 WL 190054, *2 (6th Cir. Feb. 7, 2000); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir.1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994). Michigan law and MDOC Policy Directives do not create a liberty interest in the MDOC prisoner grievance procedures that is entitled to constitutional protection under the Fourteenth Amendment's Due Process Clause. *Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Wynn v. Wolf*, 1994 WL 105907, *1 (6th Cir. Mar. 28, 1994).

The complaint alleges that defendant McDonald is liable for aiding and abetting defendant Malkowski to violate MDOC Policy Directive 03.03.105 and commit the crime of forgery in violation of a Michigan law. To the extent that this aiding and abetting claim is brought against defendant McDonald under 42 U.S.C. § 1983, it must be dismissed for failure to state a claim upon which relief may be granted. There is no civil aiding and abetting liability under 42 U.S.C. § 1983. Any alleged violations of Michigan law, including MDOC Policy Directive 03.03.105, do not rise

to the level of a violation or deprivation of a right guaranteed by the United States Constitution or other federal law which is necessary to state a federal civil rights claim pursuant to 42 U.S.C. § 1983.

Furthermore, the Court has determined that the allegations of fact in Theriot's amended complaint are insufficient to make out a viable claim that defendant Malkowski violated MDOC Policy Directive 03.03.105. Because Malkowski did not violate Policy Directive 03.03.105, defendant McDonald cannot be held liable for aiding and abetting a purported violation of Policy Directive 03.03.105 that never occurred. Without an underlying violation of Policy Directive 03.03.105 by Malkowski, defendant McDonald cannot be liable on an aiding and abetting theory.

### D.     First Amendment Retaliation

The complaint makes vague, conclusory allegations that retaliatory misconduct tickets and sanctions were issued against Theriot because he made prisoner grievances against defendant Malkowski and Sergeant Meeney. The complaint avers that Theriot was issued a "retaliatory ticket" on March 28, 2009, another ticket a week later and three more tickets on August 21, 2009. The complaint does not supply any other relevant facts to support a retaliation claim.

The Court liberally construes Theriot's amended complaint as making a retaliation claim under the First Amendment to the United States Constitution. Under the First Amendment a prisoner has the right to freedom of speech and the right to petition the government for redress of grievances. It is a violation of the Constitution to retaliate against a prisoner based upon the prisoner's exercise of his First Amendment rights. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).

To state a viable First Amendment retaliation claim, plaintiff Theriot is required to plead and allege sufficient facts showing that: (1) he was engaged in conduct protected by the First Amendment; (2) an adverse action was taken against him that would deter a person of ordinary

firmness from engaging in that protected conduct; and (3) the adverse action was motivated, at least in part, by the plaintiff's protected conduct. *Thaddeus-X*, 175 F.3d at 394. Theriot must allege facts from which it can reasonably be inferred that his exercise of a First Amendment right was a substantial or motivating factor in a defendant's retaliatory conduct. *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City School District Board of Education v. Doyle*, 429 U.S. 274, 287 (1977)).

Retaliation is easy to allege but it can rarely be supported with direct evidence of a defendant's intent or retaliatory motive. *Harbin-Bey*, 420 F.3d at 580 (6th Cir. 2005). Conclusory allegations that a defendant's adverse actions were motivated by the intent to retaliate, unsupported by material facts, do not suffice to state a retaliation claim under 42 U.S.C. § 1983. *Id.*; *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987).

Theriot's complaint falls far short because it only makes a conclusory allegation of retaliation which is not supported by sufficient material facts. The complaint does not allege the identity of the MDOC employees who issued the misconduct tickets to him, or any other facts that would establish a causal connection between the misconduct tickets and any conduct by Theriot protected by First Amendment. In the absence of essential supporting allegations of material facts, the Court concludes that the complaint fails to state a First Amendment retaliation claim under 42 U.S.C. § 1983.

### E.    Court Declines Supplemental Jurisdiction Over State Law Claims

All federal claims brought against defendants Malkowski and McDonald under 42 U.S.C. § 1983 are being dismissed. The complaint avers that Theriot invokes this Court's supplemental jurisdiction under 28 U.S.C. § 1367. The complaint is difficult to decipher and it is not clear whether it pleads Michigan state law claims against defendants Malkowski and McDonald based on any

viable legal theory. The complaint alleges that Malkowski committed forgery in violation of Michigan law and she violated MDOC Policy Directive 03.03.105. It also alleged that McDonald aided and abetted Malkowski when McDonald destroyed Theriot's evidence against Malkowski.

All Michigan state law claims against defendants Malkowski and McDonald shall be dismissed without prejudice. Pursuant to 28 U.S.C. § 1367(c)(3) the Court declines to exercise supplemental jurisdiction over any Michigan state law claims against defendants Malkowski and McDonald. *Brooks v. Rothe*, 577 F.3d 701, 709 (6th Cir. 2009); *Harper v. Auto Alliance Intern., Inc.*, 392 F.3d 195, 210 (6th Cir. 2004); *Musson Theatrical, Inc. v. Federal Express Corp.*, 89 F.3d 1244, 1254-55 (6th Cir. 1996). Generally, when the federal claims are dismissed prior to trial, the supplemental state law claims should be dismissed without reaching their merits. *Moon v. Harrison Piping Supply,* 465 F.2d 719, 728 (6th Cir. 2006); *Hankins v. The Gap, Inc.,* 84 F.2d 797, 802-03 (6th Cir. 1996); *Landefeld v. Marion General Hospital, Inc.,* 994 F.2d 1178, 1182 (6th Cir. 1993).

The Court has considered the interests of judicial economy and the avoidance of multiplicity of litigation, and balanced them against needlessly deciding issues of Michigan law. The Court finds that these interests weigh in favor of declining to exercise supplemental jurisdiction over state law claims against Malkowski and McDonald pursuant to 28 U.S.C. § 1367(c)(3).

## V.    Conclusion

Accordingly, all of the plaintiff's federal civil rights claims against defendants Malkowski and McDonald under 42 U.S.C. § 1983 in their individual and official capacities shall be **DISMISSED WITH PREJUDICE** pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1); and 42 U.S.C. § 1997e(c) for failure to state a claim upon which relief can be granted.  Pursuant to 28 U.S.C. § 1367(c)(3) the Court declines to exercise supplemental jurisdiction over Michigan state law claims against defendants Malkowski and McDonald.  All Michigan state law claims against defendants Malkowski and McDonald shall be **DISMISSED WITHOUT PREJUDICE**.

With one exception, all federal civil rights claims under 42 U.S.C. § 1983 and all Michigan state law claims against defendant Jeffrey Woods in his individual and official capacities shall be **DISMISSED WITH PREJUDICE** pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1); and 42 U.S.C. § 1997e(c) for failure to state a claim upon which relief can be granted.

The First Amendment claim against defendant Woods survives the initial screening process under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A; and 42 U.S.C. § 1997e(c). Plaintiff may proceed solely on his First Amendment claim against defendant Woods for compensatory damages under 42 U.S.C. § 1983 in Woods' individual capacity.  To the extent the amended complaint pleads the First Amendment claim against defendant Woods in his official capacity as an employee of the Michigan Department of Corrections, the official capacity claim shall be **DISMISSED WITH PREJUDICE** pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1); and 42 U.S.C. § 1997e(c) for failure to state a claim upon which relief can be granted.  Plaintiff Theriot may proceed on his First Amendment claim for compensatory damages against defendant Woods under 42 U.S.C. § 1983 but only in Woods' individual capacity.

The Clerk of the District Court shall arrange for service of summons and complaint, along with a copy of this Memorandum, upon defendant Jeffrey Woods. Defendant Woods shall be required to answer or otherwise respond to the complaint within the time allowed by the Federal Rules of Civil Procedure. 42 U.S.C. § 1997e(g)(1).

A separate order consistent with this Memorandum will be entered.

Dated: February 18, 2010.


_____*/s/ R. Allan Edgar*_____
R. ALLAN EDGAR
UNITED STATES DISTRICT JUDGE